UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CADENCE BANK, N.A., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-cv-6403 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| JEFFREY HURL, *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF No. 12). For the reasons that follow, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. The claims against Defendant Hurl in Counts I and II may proceed. For all other claims, Defendants are entitled to judgment on the pleadings.

**I. BACKGROUND**

This case originates from a Loan and Security Agreement that Plaintiff Cadence Bank, N.A., entered into with borrower Heritage Holdco, Inc., and subsidiary Heritage Sportswear, Inc. (together, "Heritage"). (ECF No. 1 ¶ 15).[1] Defendants Hurl, Schumacher, Disney, and Witthuhn are officers, shareholders, and members of Heritage, though the company itself is not a party to this case. (*Id.* ¶¶ 6–9). Under the Loan Agreement, Plaintiff extended a revolving line of credit to Heritage, the amount of which was pegged to the value of Heritage's current qualifying inventory. (ECF No. 1-1 at 1, 3–4). To determine the amount of qualifying inventory, Heritage was required to provide "Borrowing Base Certificate[s]" (hereinafter, the "Certificates") to Plaintiff at regular intervals. (*Id.* at 4).

---

[1] Cadence Bank was not itself a signatory of the Loan Agreement. It is a successor by merger to one of the lender signatories, AloStar Bank of Commerce. (*Id.* ¶ 1).

1

The Complaint alleges that Defendants, as "Senior Officers" of Heritage, falsified the Certificates by reporting inventory on consignment from another company. (ECF No. 1 ¶¶ 20, 25–28). This overstatement of inventory increased Heritage's borrowing capacity under the Loan Agreement and induced Plaintiff to lend approximately $40 million that it otherwise would not have lent. (*Id.* ¶¶ 37–40, 48). Plaintiff alleges that the Certificates were falsified regularly from October 2018 through February 2019. (*Id.* ¶¶ 18, 25).

The issue of improper inventory reporting emerged in February 2019, after Plaintiff initiated a receivership case due to Heritage Sportswear's breach of other covenants in the Loan Agreement. (ECF No. 1 ¶¶ 16, 29–30). That case was filed in the Northern District of Georgia and is captioned *Cadence Bank, N.A. v. Heritage Sportswear, Inc.*, Case No. 1:19-cv-00595 (hereinafter, the "Receivership Case"). Shortly after initiating the Receivership Case, Plaintiff sent third-party field examiners to test inventory counts. (ECF No. 1 ¶¶ 30–31). The resulting counts matched Heritage's internal data but conflicted with the Certificates, showing their falsity. (*Id.* ¶¶ 34–35). The Receivership Case ended with liquidation of Heritage's assets and assignment of its claims to Plaintiff. (*Id.* ¶ 17).

Plaintiff's Complaint states three causes of action against the Defendant officers: negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duties. Plaintiff brings the misrepresentation claims directly, and it brings the fiduciary duty claim as Heritage's assignee. Defendants filed a joint answer (ECF No. 13) and moved for judgment on the pleadings (ECF No. 12). The briefing consists of Plaintiff's response (ECF No. 17), Defendants' reply (ECF No. 20), and a pair of sur-replies (ECF Nos. 24, 25). The matter stands ripe for adjudication.

## II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)

is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks omitted). The Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (internal quotation marks omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a plaintiff's claim sounds in fraud, the plaintiff also must satisfy Federal Rule of Civil Procedure 9(b). Rule 9(b) reads: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted)). The Sixth Circuit has explained that to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and content of the alleged misrepresentation," as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal quotation marks omitted).

In addition to allegations in the pleadings, the Court may take into account "matters of

public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (internal quotation marks omitted). Additionally, the Court "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### III. LAW AND ANALYSIS

#### A. Conflict of Laws

As a threshold matter, the Court must determine which state's laws apply to the claims brought. The Loan Agreement specifies that it is governed by Georgia law, "without giving effect to any conflict of law principles." (ECF No. 1-1 at 71). This does not end the Court's inquiry, however. Plaintiff's claims, though related to the Loan Agreement, are styled in tort rather than contract. Therefore, the Court must look to state tort laws, "apply[ing] the conflict of law rules of the state in which it sits." *See Sky Tech. Partners, LLC v. Midwest Res. Inst.*, 125 F. Supp. 2d 286, 294 (S.D. Ohio 2000) (citing *Klaxon v. Stentor*, 313 U.S. 487, 490 (1941)). Ohio follows the Restatement (Second) of the Law of Conflicts. *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990) (citing *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286 (Ohio 1984)).

*1. Misrepresentation Claims*

For the misrepresentation claims (Counts I and II), the Second Restatement specifies the following inquiry:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

4

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2) (1971).

Here, the Complaint alleges that the relevant acts and omissions occurred in Ohio. (ECF No. 1 ¶¶ 13–14). This includes the signing of the Certificates, which are the source of the alleged misrepresentations. Those certificates were received and relied upon in Georgia, where Plaintiff has its principal place of business. (*Id.* ¶ 1). Accordingly, the law to apply will be either Ohio's or Georgia's.

Reviewing the Second Restatement factors, the Court determines that Ohio contacts are more abundant and significant. Heritage Sportswear is an Ohio corporation with its principal place of business in Ohio. (*Id.* ¶ 3). Two Defendants (Hurl and Wittthuhn) also are residents of Ohio, while the others (Schumacher and Disney) are residents of Illinois. (*Id.* ¶¶ 6–9). The inventory, which was the subject of the Certificates, was held at Heritage facilities in Ohio, Florida, Indiana, and Virginia. (*Id.* ¶ 30). Aside from Plaintiff's place of business, the only connections to Georgia are the Receivership Case and the Loan Agreement's choice-of-law clause. (*Id.* ¶ 16; ECF No. 1-1 at 71). Plaintiff seems to concur that Ohio law should apply; its briefing makes no reference to Georgia law. (ECF Nos. 17, 24). Because Ohio has the more significant relationship, the Court will apply Ohio tort law to Plaintiff's misrepresentation claims.

*2. Fiduciary Duty Claim*

As to the fiduciary duty claim (Count III), the Second Restatement provides as follows:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309 (1971).

Heritage Sportswear is incorporated in Ohio. (ECF No. 1 ¶ 3). Plaintiff's Georgia connections have no bearing on this claim, which Plaintiff is pursuing as an assignee. (*Id.* ¶ 17; ECF No. 1-2). The underlying controversy is between an Ohio corporation and its directors and officers, two of whom are Ohio residents. Once again, Plaintiff's briefing concurs and rests exclusively on Ohio law. (ECF Nos. 17, 24). Accordingly, the Court sees no grounds on which to override the default rule that applies the law of the state of incorporation. The Court will apply Ohio tort law to the fiduciary duty claim as well.

**B. Misrepresentation Claims**

*1. Contract versus Tort*

Defendants argue that the two misrepresentation claims (negligent and fraudulent) are in fact "a breach of contract claim disguised as tort claims," and that Plaintiff cannot hold them liable in tort for "acts . . . based solely on contractual duties." (ECF No. 12 at 10–11). Defendants cite *Wolfe v. Continental Casualty Co.* for its proposition that "under Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." 647 F.2d 705, 710 (6th Cir. 1981)). Here, however, the Court sees no inherent conflict in allowing Plaintiff to sue in tort.

6

In *Textron Financial Corp. v. Nationwide Mutual Insurance Co.*, the state court wrote that "[a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976)). Moreover, the tort claim "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Id.* at 1271 (emphasis in original). Under *Textron*, therefore, a contract action will not preclude tort claims that are based on separate duties and damages.

The pertinent contract action was the Receivership Case, brought by Plaintiff for breach of the Loan Agreement. That action proceeded solely against Heritage, as Defendants were not parties to the Loan Agreement and owed no duties under it. By contrast, the claims here are based on tortious acts (*i.e.*, the alleged misrepresentations) in derogation of general (not contractual) duties of care. While the duty of Heritage to deliver Borrowing Base Certificates was contractual in nature, the breach here relates to Defendants' duty to exercise reasonable care in making the representations contained therein. This fulfills the first requirement in *Textron* of a separate duty.

Nor can it be said conclusively at this stage that Plaintiff has failed to allege damages in tort. Defendants cite *Thornton v. Cangialosi* for its proposition that, "[i]f the tort claim is factually intertwined with the breach of contract claim such that the two cannot be separated, recovery cannot be had for both." 2010 WL 2162905, at *2 (S.D. Ohio May 26, 2010) (citing *Textron*, 684 N.E.2d at 1272). Here, the damages claims do differ—not vastly, but adequately. The Receivership Case sought repayment of the principal and interest on Heritage's line of credit due to multiple defaults apart from overstatement of inventory. (Receivership Case ECF No. 1). The damages

7

theory in this case is that Defendants induced Plaintiff to loan approximately $40 million in funds, leveraged against the consigned inventory, that it otherwise would not have lent. (ECF No. 1 ¶¶ 53, 71). It is conceivable that the loaning of those funds, with the attendant opportunity cost, could have damaged Plaintiff in ways that are separable from the Receivership Case. *See, e.g.*, *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 622 N.E.2d 1093, 1107 (Ohio Ct. App. 1993) (damages from defendant's misrepresentations—specifically, the "forbearance of pursuing other leasing opportunities"—were distinct from "damages based on the benefit of the bargain" and thus were recoverable in tort). There might be a double-recovery concern as this case progresses, but it would turn on issues of fact that are not evident at this stage.

The Court therefore rejects Defendants' premise that this case is a contract action in disguise. Borrowing the language of *Wolfe*, this is not "the same case" as the Receivership Case. 647 F.2d at 710. "Ohio law provides that a corporate officer can be held personally liable for a tort committed while acting within the scope of his employment," *Atram v. Star Tool & Die Corp.*, 581 N.E.2d 1110, 1113 (Ohio Ct. App. 1989); and that is the crux of Plaintiff's case here.

Having determined that the Receivership Case does not bar Plaintiff from maintaining its case in tort, the Court next must consider whether Plaintiff adequately has pled the required elements of its misrepresentation claims.

### 2. Required Elements

Under Ohio law, the tort of negligent misrepresentation involves the following elements:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

8

*Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (emphasis removed) (quoting 3 Restatement (Second) of Torts 126–27, § 552(1) (1965)).

Fraudulent misrepresentation differs mainly in the level of intentionality. It requires proof of the following elements:

> (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Brewer v. Brothers*, 611 N.E.2d 492, 495 (Ohio Ct. App. 1992) (citing *Burr v. Stark Cty. Bd. of Commrs.*, 491 N.E.2d 1101, 1105 (Ohio 1986); and *Klott v. Assocs. Real Estate*, 322 N.E.2d 690, 691–92 (Ohio Ct. App. 1974)).

### 3. *Claims Against Defendants Schumacher, Disney, and Witthuhn*

First, the Court must narrow the misrepresentation counts to the sole Defendant who is alleged to have made a misrepresentation: Defendant Hurl. The Borrowing Base Certificates were the source of all alleged misrepresentations (ECF No. 1 ¶¶ 51, 58), and they were signed only by Defendant Hurl as CFO (*Id.* ¶¶ 54, 57). Nothing in the Complaint suggests that Defendants Schumacher, Disney, or Witthuhn personally supplied any false information or made any false representations. Rather, Defendants Schumacher, Disney, and Witthuhn are alleged to have "approved of or directed Defendant Hurl to sign the fraudulent borrowing base certificates," by virtue of their positions as "Senior Officers" of Heritage. (*Id.* ¶¶ 23, 38, 64). But these allegations are bare and conclusory, resting only on corporate titles and a misreading of the Loan Agreement. The Loan Agreement required Heritage to submit Certificates signed by "*a* Senior Officer" (ECF No. 1-1 at 4 (emphasis added)); but Plaintiff cites that clause as obligating *every* Senior Officer. (ECF No. 1 ¶ 22–23).

9

Absent any well-pled facts to support a personal connection with or participation in the alleged torts, Defendants Schumacher, Disney, and Witthuhn are "not liable, merely because of [their] official character, for the fraud or false representations of the other officers or agents of the corporation." *Seale v. Citizens Sav. & Loan Ass'n*, 806 F.2d 99, 106 (6th Cir. 1986). Accordingly, Plaintiff's misrepresentation claims lie, if at all, with Defendant Hurl.

### 4. Claims Against Defendant Hurl

As to Defendant Hurl, the Court will proceed to Defendants' other arguments. Defendants seek to dismiss the negligent misrepresentation claim for lack of a "special relationship" between them and Plaintiff. (ECF No. 12 at 15–16). The "special relationship" element has been applied in some courts to limit the reach of negligent misrepresentation claims and exclude "ordinary business transactions." *Palmer-Donavin Mfg. Co. v. Rheem Sales Co.*, 2014 WL 2767665, at *8 (S.D. Ohio June 18, 2014) (internal quotation marks omitted). "'Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class.'" *Id.* (quoting *Ziegler v. Findlay Indus.*, 464 F.Supp.2d 733, 738 (N.D. Ohio 2006)).

As one federal court observed in denying a motion to dismiss, "this appears to be a very unsettled area in Ohio law." *MV Circuit Design, Inc. v. Omnicell, Inc.*, 2015 WL 1321743, at *12 (N.D. Ohio Mar. 24, 2015). *Palmer-Donavin* referenced some state-court cases supporting the application of a special relationship element, including *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (tort action against newspaper by its readers found improper, as readers "do[] not fall within a special limited class (or group) of foreseeable persons"); *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 215 (Ohio 1982) (tort action found appropriate against accountant by third parties who foreseeably relied on their work); and *Nichols v. Ryder Truck*

10

*Rentals, Inc.*, 1994 WL 285000 (Ohio Ct. App. June 23, 1994) ("Such persons who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks. . . . The business transactions of the alleged injured party are usually those involving lease or insurance agreements." (citing *McCarthy, Lebit*, 622 N.E.2d 1093)). None of these state-court cases, however, stands squarely for the requirement of a special relationship exclusive of ordinary business transactions.[2]

This is a dispositive issue. Though Defendants argue to the contrary, the Complaint plainly alleges that Defendant Hurl signed the Certificates to guide Plaintiff in a business transaction—specifically, to determine the amount of the loan Plaintiff would extend to Heritage. (ECF No. 1 ¶¶ 24, 37–40, 51). If this suffices, then Plaintiff has stated a viable claim for negligent misrepresentation against Defendant Hurl. On the other hand, if such claims are limited to professionals like attorneys and accountants, then Plaintiff would fail for want of a special relationship.

This Court is persuaded by the harmonizing approach taken in *National Mulch and Seed, Inc. v. Rexius Forest By-Products, Inc.*, 2007 WL 894833, at *9–12 (S.D. Ohio Mar. 22, 2007). There, the court "agree[d] that a special relationship is not a formal element of a negligent misrepresentation claim under Ohio law," and reasoned that "[t]o the extent Ohio courts discuss a

---

[2] Some other intermediate state courts have described a special relationship requirement more forcefully. *See, e.g.*, *Austin v. Warrensville Heights*, 176 N.E.3d 67, 75 (Ohio Ct. App. 2021) ("Thus, where negligent misrepresentation claims have been recognized, the courts have emphasized the existence of a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm."); *Levy v. Seiber*, 57 N.E.3d 331, 340 (Ohio Ct. App. 2016) (writing, with a gloss on *Nichols*, that "[t]he class of persons who are in the business of supplying information to others *is limited to* certain professionals" (emphasis added)). These cases, while relevant, do not settle the debate—in part because they cannot substitute for a pronouncement of the Ohio Supreme Court. *See Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985) (*Erie* doctrine "dictates that federal courts must apply the law of the state's highest court" when sitting in diversity jurisdiction); *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 218–19 (6th Cir. 1990) (intermediate appellate decisions are relevant, but not conclusive, at least where there is "other persuasive data that the highest court of the state would decide otherwise" (internal quotation marks omitted)).

special relationship in connection with a negligent misrepresentation claim, the discussion appears to be related to the requirement that a defendant supply false information for the guidance of the plaintiff in its business transactions." *Id.* at *9. This "serves to limit the class of potential plaintiffs," and precludes claims over misrepresentations "intended to reach an extensive, unresolved class of persons." *Id.* at *9-10. Notably, this approach would *not* preclude negligent misrepresentation claims between the defined parties in ordinary business transactions, as is the case here.

Rather than foreclosing relief on unsettled grounds, the prudent course is to preserve Plaintiff's claim, as did the courts in *National Mulch* and *MV Circuit Design*, and "wait to see what discovery shows the parties' true relationship was." 2015 WL 1321743, at *12. Therefore, the negligent misrepresentation claim in Count I can proceed against Defendant Hurl.

Next, Defendants seek to dismiss the *fraudulent* misrepresentation claim as insufficiently pled under Rule 9(b). As this claim sounds in fraud, Plaintiff must meet heightened pleading standards by "alleg[ing] the time, place, and content of the alleged misrepresentation," as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett*, 607 F.3d at 1100 (internal quotation marks omitted).

At least as to Defendant Hurl, the Complaint meets this standard. It alleges specific misrepresentations about eligible inventory (ECF No. 1 ¶¶ 25–26, 35, 58) and attaches the exact Certificates in which those misrepresentations were made (ECF No. 1-3). It alleges scheme and motive: "Defendants submitted incorrect inventory information and representations . . . so that the Bank would loan Heritage additional funds under the Loan Agreement." (ECF No. 1 ¶ 66). And it alleges resulting injury: the Certificates "caused the Bank to make additional loan advances to Heritage" and "significantly increased the Bank's substantial losses under the Loan Agreement."

12

(*Id.* ¶¶ 37, 39–41). No more is required at this stage. Therefore, the fraudulent misrepresentation claim in Count II can proceed against Defendant Hurl.[3]

To summarize, the negligent and fraudulent misrepresentation claims (Counts I and II) remain viable against Defendant Hurl. Judgment on the pleadings is granted on those claims as to all other Defendants.

### C. Fiduciary Duty Claims

Plaintiff brings its fiduciary duty claim as assignee to Heritage. "'[A]n assignee . . . of a claim stands in the shoes of the assignor . . . and succeeds to all the *rights and remedies* of the latter.'" *Chrysler Fin. Co. v. Wilkins*, 812 N.E.2d 948, 952 (Ohio 2004) (quoting *Inter Ins. Exchange of Chicago Motor Club v. Wagstaff*, 59 N.E.2d 373, 375 (Ohio 1945) (emphasis in original)). Therefore, Plaintiff is limited to whatever recovery *Heritage* could have obtained from Defendants' breach of duty *to Heritage*.

This cause of action is fatally flawed because Plaintiff seeks to substitute its own damages for those of Heritage. Plaintiff alleges that "*The Bank* has loaned an additional $40,541,901.51 to Heritage that it would not have loaned if it had correct information" (ECF No. 1 ¶ 80 (emphasis added)); that "*Plaintiff* has suffered damages as a direct and proximate result of the breaches by Defendants of their statutory and common law duties as D&Os [directors & officers]" (*Id.* ¶ 81 (emphasis added)); and that "*Plaintiff* has been directly and substantially injured by reason of Defendants' intentional breach and/or reckless disregard of their fiduciary duties to Heritage" (*Id.* ¶ 82 (emphasis added)). All of these allegations state harms to Plaintiff, not Heritage.

---

[3] Ultimately, Plaintiff may be limited to a single theory of recovery. Defendant Hurl's acts could have been negligent for Count I, or intentional for Count II, but not both simultaneously. *See Textron*, 684 N.E.2d at 1269 ("Where fraud and negligent misrepresentation are claimed as to the same set of underlying facts, if fraud is proved, then the claim of negligent misrepresentation is necessarily subsumed thereby."). At this stage, however, Plaintiff is permitted to plead in the alternative. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

13

The sole allegations about harm to Heritage are that "Defendants breached their fiduciary duties when they misstated the inventory on borrowing base certificates submitted to the Bank, causing financial harm to Heritage" (*Id.* ¶ 46); and that "[a]s a direct and proximate result of Defendants' breaches of their fiduciary duties, Defendants have caused Heritage to suffer damages as a result of the wrongdoing described herein" (*Id.* ¶ 79). These statements are vague and conclusory, as they do not attempt to connect the breach of duty to any specific harm suffered by Heritage. In their briefing, Plaintiffs claim that "[a]s a result of Defendants' bad acts, Heritage incurred additional loans and debt that it could not repay and could not satisfy with existing collateral," and that those bad acts "deprived Heritage of any reasonable defense to the appointment of a receiver." (ECF No. 17 at 18–19). However, such allegations were not made in the Complaint, and it is well established that a party may not supplement its Complaint through briefing. *See, e.g.*, *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("[A] court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings. . . . '[M]emoranda do not constitute pleadings under Rule 7(a).'" (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2])).

As pled, the Complaint contains no factual allegations that support an injury *to Heritage* by reason of Defendants' breach of fiduciary duties. Rather, all indications are that Plaintiff seeks to recover its *own* damages, despite standing in the shoes of Heritage. Plaintiff's failure to allege injury means it cannot state a *prima facie* case for breach of fiduciary duty. *See Wells Fargo Bank, N.A. v. Sessley*, 935 N.E.2d 70, 83 (Ohio Ct. App. 2010) (third required element of fiduciary duty claim is "an injury resulting proximately therefrom" (internal quotation marks omitted)).[4] Consequently, the Court must grant Defendants' Motion on the fiduciary duty claim in Count III.

---

[4] Even if Plaintiff properly had alleged the damages described in its briefing, the injury would remain dubious. *Wells Fargo* states that the injury must be a proximate one, and it is apparent from the Receivership Case that the purported

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED IN PART**. Counts I and II are **DISMISSED** as against Defendants Schumacher, Disney, and Witthuhn; and Count III is **DISMISSED** in its entirety. The Motion is **DENIED IN PART** as to Counts I and II against Defendant Hurl. Plaintiff's case may proceed against Defendant Hurl on the negligent and fraudulent misrepresentation claims only.

IT IS SO ORDERED.

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: March 14, 2022**

---

bad debt was not among the main causes of Heritage's dire financial straits. (*See* Receivership Case ECF No. 1). The second argument, regarding the loss of defenses to the receivership, is belied by the judge's order appointing a receiver, which made no reference to the Certificates or falsification thereof. (*See* Receivership Case ECF No. 7).